UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

In re Subpoenas in
JEANNE PAHLS, *et al.*,

       Plaintiffs,

  v.

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF BERNALILLO, *et al.*,

       Defendants;

EXECUTIVE OFFICE OF THE
PRESIDENT OF THE UNITED STATES,

       Third-Party Movant.
_____

No. 08-mc-0362 (RJL)

## ERRATA FILING

Attached to this errata filing is the decision of the District of Columbia Circuit in *Citizens for Responsibility and Ethics in Washington v. Department of Homeland Security*, No. 07-5407 (July 11, 2008), which undersigned counsel inadvertently failed to attach to plaintiffs' Notice of Sipplemental Authority, filed earlier today.

                                         Sheepishly submitted,

                                         /s/ *Arthur B. Spitzer*
                                         _____
                                         Arthur B. Spitzer (D.C. Bar No. 235960)
                                         American Civil Liberties Union
                                           of the National Capital Area
                                         1400 20th Street NW, Suite 119
                                       Washington DC 20036
                                       Tel (202) 457-0804
                                       Fax (202) 452-1868

                                       Attorney for Plaintiffs

July 14, 2008

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 21, 2008        Decided July 11, 2008

No. 07-5406

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
APPELLEE

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01912)

---

*Jonathan F. Cohn*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, and *Mark B. Stern*, *Michael S. Raab*, *Mark R. Freeman*, and *Christopher J. Walker*, Attorneys. *Jeffrey A. Taylor*, U.S. Attorney, entered an appearance.

*Anne L. Weismann* argued the cause for appellee. With her on the brief was *Melanie Sloan*.

2

*David L. Sobel* and *Eric N. Lieberman* were on the brief for *amici curiae* The Washington Post, et al. in support of appellee and urging affirmance.

Before: SENTELLE, *Chief Judge*, and TATEL and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this Freedom of Information Act case, Citizens for Responsibility and Ethics in Washington (CREW), a nonprofit organization and government watchdog, seeks disclosure of Secret Service visitor logs revealing whether nine specified individuals entered the White House Complex or the Vice President's Residence at any time "from January 1, 2001, to the present." Instead of invoking any FOIA exemption, the government moved for summary judgment, arguing that even though the Secret Service is an "agency" for FOIA purposes, the requested visitor logs do not qualify as "agency records" subject to disclosure. *See* 5 U.S.C. § 552(a)(4)(B) (granting federal courts jurisdiction to enjoin agencies from improperly withholding "agency records"). Disagreeing, the district court denied the government's motion and ordered the Secret Service to "process [CREW]'s Freedom of Information Act request and produce all responsive records that are not exempt from disclosure within 20 days." Order, *CREW v. Dep't of Homeland Sec.*, No. 06-1912 (D.D.C. Dec. 17, 2007). On the parties' joint motion, however, the court stayed its order pending the government's appeal. Although neither party has raised the issue, we now dismiss the appeal for lack of appellate jurisdiction. *See Nat'l Mining Ass'n v. Kempthorne*, 512 F.3d 702, 706 (D.C. Cir. 2008) ("We have an 'independent obligation to determine whether subject-matter jurisdiction exists,' which we must discharge before

3

ruling on the merits." (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted))).

The government claims two bases for appellate jurisdiction. First, it invokes 28 U.S.C. § 1291, which provides "jurisdiction of appeals from all final decisions of the district courts of the United States." Here, however, the district court's order is not final; it merely denied the government's motion for summary judgment, and "as a general rule, we lack jurisdiction to hear an appeal of a district court's denial of summary judgment, partial or otherwise." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 296 (D.C. Cir. 2006). "This rule prevents piecemeal litigation and eliminates delays occasioned by interlocutory appeals," *McSurely v. McClellan*, 697 F.2d 309, 315 (D.C. Cir. 1982), and we see no reason to depart from it here. The government has yet to claim the right to withhold the requested records under any of FOIA's nine exemptions. *See* 5 U.S.C. § 552(b) (listing exemptions). Indeed, in its motion for summary judgment, the government explained, "[e]ven if these types of records were agency records under the FOIA, most or all of them would be protected by one or more FOIA exemptions, most notably Exemption 5, which encompasses the common law discovery privileges," Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. 17 n.18 ("Mot. for Summ. J."), including the presidential communications privilege, *see Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) ("Exemption 5 . . . has been construed to incorporate the presidential communications privilege."). "Therefore," the government continued, "should the courts somehow conclude that the materials in question are 'agency' records subject to FOIA, defendants respectfully reserve the right to assert any applicable exemption claim(s) prior to disclosure, and to litigate further any such exemption claims." Mot. for Summ. J. 17 n.18. That is precisely the

4

situation in which the government now finds itself. Only after the district court rules on any claimed exemptions—either for or against the government—will there be a final decision for the government or CREW to appeal. The district court's decision is thus hardly one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

Second, the government points to 28 U.S.C. § 1292(a)(1), which allows appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions." But our precedent makes clear that orders like the one before us fail to qualify as appealable injunctions under section 1292(a)(1). Indeed, *Green v. Department of Commerce*, 618 F.2d 836 (D.C. Cir. 1980), is directly on point. There a FOIA requestor sought disclosure of "boycott reports"—documents revealing "requests by foreign nations for cooperation with boycotts against countries friendly to the United States"—that exporting companies had submitted to the Department of Commerce. *Id.* at 837. The district court ordered the government to produce the reports to the plaintiff, but only after notifying the exporters who had submitted them, "so that they could object to specific disclosures that might cause them competitive injury." *Id.* at 838. Rejecting the government's contention that this order amounted to an appealable injunction, we explained that the argument "seem[ed] to be based on the erroneous belief that the District Court order impliedly require[d] disclosure of documents under the FOIA." *Id.* at 841. "On the contrary," we said, "the District Court has not yet determined whether to order release of any documents sought by appellees. The court has merely heard and rejected two of the [agency]'s legal defenses." *Id.* at 839.

5

So too here. As in *Green*, "there has not *yet* been any requirement—implied or otherwise—of disclosure of documents," *id.* at 841; the district court has simply heard and rejected the Secret Service's legal defense that its visitor logs fail to qualify as "agency records." Here, as in *Green*, it is entirely possible that the government will never have to turn over a single document given that the Secret Service may yet be entitled to withhold some or all of the documents under one or more of FOIA's nine exemptions. Indeed, the district court made clear that the government "has a ready recourse in Exemption 5" should it believe that the visitor records would reveal privileged presidential communications. *CREW v. Dep't of Homeland Sec.*, 527 F. Supp. 2d 76, 99 (D.D.C. 2007). Both *Green* and this case thus stand in contrast to FOIA cases in which we found section 1292(a)(1) jurisdiction after a district court had considered and rejected the government's claimed exemptions. *See, e.g.*, *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) ("The trial court unequivocally rejected the Government's legal position regarding the substantive protection afforded by the attorney work-product doctrine under Exemption 5 of FOIA, and ordered the Government to disclose materials for which it claimed exemption."); *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 128 (D.C. Cir. 2005) (finding the district court's order appealable under section 1292(a)(1) because "it require[d] the disclosure of documents for which the agencies claim[ed] no basis for non-disclosure beyond the argument already rejected by the district court"); *see also Ferguson v. FBI*, 957 F.2d 1059, 1064 (2d Cir. 1992) (distinguishing appealable FOIA disclosure orders from those in which "the district court ha[d] yet to determine whether the [agency] must disclose the relevant information").

In *Green*, we also rejected the government's argument that because the district court's order directed the agency to

6

contact exporters whose trade secrets could be affected by disclosure, the order was "injunctive in nature." 618 F.3d at 841. We explained that the order was "not . . . an 'injunction' for purposes of Section 1292(a)(1)" because "it d[id] not affect the rights or behavior of parties outside of the litigation, and d[id] not differ from any other time-consuming requirement imposed on litigants by courts in the interest of obtaining full information." *Id.* For similar reasons, the district court's order requiring the Secret Service to process CREW's request within twenty days does not qualify as an injunction under section 1292(a)(1). Under the court's order, the Secret Service will have to search for and locate any responsive documents and claim any exemptions it believes applicable. At that point, the court may agree with the agency, allowing it to withhold the requested records, in which case the government would have no cause to appeal. Or alternatively, "the issues might be sufficiently narrowed to permit the parties to reach a settlement." *Id.* at 839. In either case, appellate review at this stage is premature.

The collateral order doctrine, of course, provides another possible basis for appellate jurisdiction. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). That doctrine allows interlocutory review of a "small class" of decisions that "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). The Supreme Court has repeatedly emphasized the doctrine's deliberately "modest scope," rejecting efforts "to expand the 'small class' of collaterally appealable orders" beyond its "narrow and selective . . . membership." *Will v. Hallock*, 546 U.S. 345, 350 (2006); *see also Digital Equip. Corp.*, 511 U.S. at 868 ("[T]he 'narrow' exception should stay that way and never be

7

allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." (citation omitted)).

Although the government never asserted jurisdiction under the collateral order doctrine, it has raised an argument on the merits that could bear on the doctrine's applicability to this case. Specifically, the government contends that forcing the Secret Service to invoke Exemption 5 is unacceptable because "requiring the President or Vice President to consider the assertion of privileges over requested documents is an injury separate from the disclosure of the documents themselves." Appellants' Opening Br. 41. After all, as the government points out, "[t]he burden of processing the records and asserting exemptions would fall squarely on the President, the Vice President, and their senior advisors—the only people with the information necessary to make the requisite privilege determinations." *Id.* at 40. Even though the government neglected to make this argument in jurisdictional terms, we address it here because it speaks both to the "important[ce]" of the district court's decision and to its reviewability "on appeal from a final judgment." *Coopers & Lybrand*, 437 U.S. at 468.

The government places great weight on *Cheney v. United States District Court*, 542 U.S. 367 (2004), arguing that requiring invocation of FOIA Exemption 5 would run counter to the Supreme Court's warning that courts should hesitate before requiring the President or Vice President to "bear the burden" of "asserting specific claims of privilege and making . . . particular objections." *Id*. at 388-89. In the context of this case, we disagree.

First of all, the government has yet to claim that *any* FOIA exemption applies, and Exemption 5's presidential

8

communications privilege is but one of several exemptions on which the government might rely. By requesting review now, the government asks us to assume both that Exemption 5 provides the only way for the Secret Service to withhold the contested visitor records and that the district court will reject its application. We see no reason to make either assumption.

In any event, we find unpersuasive the government's argument that this case implicates the same separation-of-powers concerns present in *Cheney*. There, two nonprofit organizations, Judicial Watch and the Sierra Club, filed civil suits, not FOIA requests, directly against various government officials—including Vice President Cheney himself—alleging that the National Energy Policy Development Group (NEPDG) was subject to the Federal Advisory Committee Act's disclosure requirements. *Id.* at 373-74. The district court had allowed discovery to proceed against the Vice President in order to establish exactly who attended NEPDG meetings, and the Vice President sought a writ of mandamus from this court to vacate the discovery orders. *See In re Cheney*, 334 F.3d 1096, 1100-01 (D.C. Cir. 2003). After emphasizing the need for the district court to "narrow discovery to ensure that plaintiffs obtain no more than they need to prove their case," *id.* at 1106, we rejected the Vice President's request for mandamus, explaining that he could object to individual discovery requests on executive privilege grounds if need be, *id.* at 1107. The Supreme Court reversed, explaining that "separation-of-powers considerations should inform a court of appeals' evaluation of a mandamus petition involving the President or the Vice President." *Cheney*, 542 U.S. at 382. Seizing on the Court's statement that "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated," *id.* at 385, the government argues that requiring the Secret

9

Service to review FOIA requests for its visitor logs is tantamount to the discovery request at issue in *Cheney*.

*Cheney* is distinguishable from this case on several grounds. To begin with, the discovery request in *Cheney* was directed at the Vice President himself. Indeed, the Court explained that "[w]ere the Vice President not a party in the case, the argument that the Court of Appeals should have entertained an action in mandamus . . . might present different considerations." *Id.* at 381. The Court also observed, "[t]his is not a routine discovery dispute. The discovery requests are directed to the Vice President and other senior Government officials who served on the NEPDG to give advice and make recommendations to the President." *Id.* at 385. Here, CREW seeks documents not from the President or Vice President, but rather from the Secret Service, a FOIA agency well accustomed to dealing with such requests. Indeed, the agency processed this FOIA request in accordance with its routine procedures. *See* Lyerly Decl. ¶¶ 2-9, 11-28 (May 24, 2007) (explaining how the Secret Service initially processed CREW's request and asserting several FOIA exemptions over certain responsive documents); *see also* 6 C.F.R. § 5.4 (establishing procedures by which components within the Department of Homeland Security process FOIA requests). According to the Secret Service's FOIA officer, "the individuals who performed the searches . . . conduct FOIA searches as part of their regular responsibilities." Lyerly Decl. ¶ 8. True, the agency would need to consult with the White House before claiming Exemption 5 on executive privilege grounds, but, as The Washington Post et al. point out in their amicus brief, "[t]here is, in fact, nothing extraordinary about such a procedure." Amicus Br. 12. The Justice Department issued a memorandum in 1993 explaining that "[i]n processing FOIA requests, agencies searching for responsive records

10

occasionally find White House-originated records (or records containing White House-originated information) that are located in their files." U.S. Dep't of Justice, FOIA Update: FOIA Memo on White House Records, Vol. XIV, No. 3 (1993), *available at* http://www.usdoj.gov/oip/foia_ updates/Vol_XIV_3/page4.htm. When that happens, agencies are instructed to forward the records "to the Office of the Counsel to the President for any recommendation or comment it may wish to make, including any assertion of privilege, prior to [the agency's] response to the FOIA requester." *Id.* Indeed, the government concedes that the Secret Service followed a similar practice with regard to previous visitor log requests, explaining that in "two cases . . . [visitor] records were released only after obtaining approval from the White House." Appellants' Reply Br. 12 n.3; *see also* 3d Morrissey Decl. ¶ 23 (explaining that in three previous cases the Secret Service released visitor records "after the Office of the President and the Office of the Vice President, in the exercise of discretion, expressly authorized the[] releases").

Moreover, a profound difference exists between subpoenas and discovery requests in civil or criminal cases against the President or Vice President and routine FOIA cases involving records that may or may not touch on presidential or vice presidential activities. Driving the *Cheney* Court was a concern that forcing the Vice President to assert executive privilege in the context of broad discovery requests submitted during civil litigation would set "coequal branches of the Government . . . on a collision course." *Cheney*, 542 U.S. at 389. In the civil discovery context, if the President or Vice President refuses to submit to a court's discovery order, the court's ultimate sanction is a contempt finding against the President or Vice President. In the FOIA context, however, no such danger exists. If the Secret Service claims authority to withhold the requested records under

11

Exemption 5, and if a court ultimately finds that exemption inapplicable, the agency would simply have to disclose the documents. If the agency refused to do so, it—not the President or Vice President—would "face[] the sanction of contempt." *Edmonds v. FBI*, 417 F.3d 1319, 1323 (D.C. Cir. 2005) (explaining that if an agency refuses to disclose documents as required by a court order, the agency can be held in contempt). Furthermore, unlike civil discovery, which the Court noted lacks "checks" sufficient "to discourage the filing of meritless claims against the Executive Branch," *Cheney*, 542 U.S. at 386, FOIA provides a carefully structured process for dealing with requests for agency documents that might reveal too much about presidential communications. The government has offered no convincing reason to depart from Congress's statutory design here.

*Cheney* is also distinguishable because CREW's FOIA request has little in common with the broad discovery order at issue there. In *Cheney*, the Court contrasted the disputed discovery requests before it with the acceptable subpoena orders at issue in *United States v. Nixon*, 418 U.S. 683 (1974), which had "'precisely identified' and 'specific[ally] . . . enumerated' the relevant materials." *Cheney*, 542 U.S. at 387 (quoting *Nixon*, 418 U.S. at 688 & n.5) (alteration in original). The *Cheney* discovery request, by contrast, "ask[ed] for everything under the sky." *Id.* Given the broad scope of those discovery requests, the Court concluded that the Executive Branch should not have to "bear the burden of invoking executive privilege with sufficient specificity and of making particularized objections." *Id.* at 388 (internal quotation marks omitted).

CREW has not made a massive, wide-ranging, "overly broad discovery request[]," *id.* at 386, that would require the President, Vice President, or their staff to sort through

12

mountains of files for responsive documents while "critiquing the unacceptable discovery requests line by line," *id.* at 388. Rather, CREW's request "'precisely identified' and 'specific[ally] . . . enumerated' the relevant materials," *Cheney*, 542 U.S. at 387 (quoting *Nixon*, 418 U.S. at 688 & n.5) (alteration in original), focusing on very specific records all containing the same basic information: names, dates, and other visitor data.  Critically for our purposes, moreover, this particular FOIA request is narrowly drawn, targeting nine specific individuals.  Accordingly, the burden on the White House or Office of the Vice President to decide whether to claim Exemption 5 over any responsive records should prove minimal, especially if, as appears likely from the government's current litigation posture, the White House issues a blanket claim of privilege over all responsive Secret Service visitor records.

Finally, although *Cheney* makes clear that courts should "explore other avenues, short of forcing the Executive to invoke privilege, when they are asked to enforce against the Executive Branch unnecessarily broad subpoenas," *id.* at 390, nothing in the opinion suggests that routine FOIA requests to executive agencies ought to ring the same alarm bells.  Taking the government's argument to its logical conclusion would mean that the President should *never* have to assert executive privilege in the Exemption 5 context because doing so is simply too burdensome.  But that can't be right—indeed, the President has routinely invoked Exemption 5 in other FOIA cases.  For example, when the Democratic National Committee recently filed a FOIA request with the Justice Department seeking White House emails regarding the firings of several United States Attorneys, the government successfully argued to the district court that Exemption 5's presidential communications privilege protected the emails from disclosure.  *See Democratic Nat'l Comm. v. Dep't of*

13

*Justice*, 539 F. Supp. 2d 363, 365-68 (D.D.C. 2008). Similarly, when a FOIA plaintiff sought documents from the Defense Department "regarding procedures for the forwarding of military death penalty cases to the President," the government successfully withheld those records based on Exemption 5. *Loving v. Dep't of Defense*, 496 F. Supp. 2d 101, 104, 106-09 (D.D.C. 2007); *see also, e.g.*, *N.Y. Times Co. v. Dep't of Defense*, 499 F. Supp. 2d 501, 516 (S.D.N.Y. 2007) (finding comments sent from a White House Counsel's Office attorney regarding the President's radio address protected from disclosure by Exemption 5); *Berman v. CIA*, 378 F. Supp. 2d 1209, 1218-22 (E.D. Cal. 2005) (finding daily briefings from President Lyndon Johnson's term of office protected by Exemption 5). As these examples well demonstrate, invocation of the presidential communications privilege in FOIA cases is a routine occurrence, not a uniquely intrusive burden.

Having found no jurisdictional basis under which we can proceed, we conclude with the language with which we closed in *Green*:

> In a[] FOIA case a "final decision" is an order by the District Court requiring release of documents by the Government to the plaintiff, or an order denying the plaintiff's right to such release. The case at bar does not present an appealable "final order," but rather an interlocutory order issued in the course of a continuing proceeding. By dismissing this appeal we will enable the District Court to complete its work without further interruption. Perhaps the result of the District Court proceeding will make an appeal from final judgment unnecessary; perhaps it will sharpen

14

> and narrow the legal issues that must eventually be decided by an appellate court. The parties may regret that they cannot now obtain a ruling on the merits after they have prepared for this appeal, but we believe that in the long run close adherence to the final judgment rule is better calculated to produce considered and expeditious justice.

*Green*, 618 F.2d at 841-42. Because we find this reasoning directly applicable here, we dismiss the government's appeal for lack of jurisdiction.

*So ordered.*